**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOHNNY ANDREW MOORE, SR., *et al.*

                Appellants,

                v.

JUDY A. ROBBINS, *United States Trustee*

                Appellee.

Civil Action No. 13-1122 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The *pro se* appellants, Johnny Andrew Moore, Sr. ("Mr. Moore") and Maria Ford Moore ("Mrs. Moore") (collectively, the "appellants"), appeal from the decision of the United States Bankruptcy Court for the District of Columbia denying the appellants' discharge under Chapter 7 of the bankruptcy code for failure to obey a court order and dismissing the appellants' counterclaim filed in that action. The appellants also seek review of the Bankruptcy Court's denial of the appellants' motion for recusal. The Court affirms the Bankruptcy Court's Order.[1]

## I.    BACKGROUND

The Order which is the subject of this appeal stems from the appellants' alleged violations of the Bankruptcy Court's orders in the bankruptcy petition proceedings. The Court first describes the bankruptcy petition proceedings before turning to the adversary proceeding resulting in the Order at issue.

---

[1] The Order denying the discharge was entered on May 20, 2013 and clarified on June 3, 2013, upon denial of the appellants' Motion to Set Aside Verdict and For a New Trial. Unless otherwise noted, references to the "Order" in this Memorandum and Order refer to the May 20, 2013 Order.

## A.    The Appellants' Bankruptcy Petition

The appellants petitioned for Chapter 13 bankruptcy on May 27, 2010.  Bankruptcy

Record ("B.R.") (Johnny Andrew Moore, Sr. Voluntary Bankruptcy Petition, Case No. 10-515)

at 1, ECF No. 2.[2]  In response to the objection to the petition filed by a bank holding a deed of

trust on one of the appellants' homes, the appellants began making various frivolous legal claims

and demands in an apparent attempt to invalidate the mortgage on their property.  For instance,

the appellants filed a document entitled "Interrogatives [sic] Depositions for Disclosure &

Discovery," which, *inter alia*, sought an admission from the bank that 30-year mortgages were

"illegal."  *See* B.R. at 34, ECF No. 2.  The appellants also sent the objecting bank an "Affidavit

& Official Cancellation Discharge Note-Draft" that purported to discharge Mr. Moore's

mortgage and allow Mr. Moore to retain his property "free and clear of all claims."  B.R. at 39,

ECF No. 2.

The appellants voluntarily converted their petition from Chapter 13 to Chapter 7 on

October 22, 2010, B.R. at 109 ("Notice of Conversion from Chapter 13 Case to Chapter 7

Case"), and subsequently filed an amended schedule of assets and statement of financial affairs

on May 4, 2011, B.R. at 142, ECF No. 2.  The Chapter 7 trustee timely objected to many of the

exemptions claimed in this new schedule and moved the Bankruptcy Court, *inter alia*, to direct

"the [appellants] to permit the Trustee and his auctioneers reasonable access [to] the [appellants']

residences to review and evaluate all partially exempt and non-exempt personal property."  *See*

B.R. at 171 (Trustee's Objection to Exemptions and Notice of Time to Respond to Objection),

ECF No. 2.  The Bankruptcy Court sustained the trustee's objections and ordered the appellants

to "permit the Trustee and his auctioneers reasonable access to [the appellants'] residences to

---

[2] Due to the size of the record in this case, references to the Bankruptcy Record will include the page number and ECF Number where the document can be found.

review and evaluate all partially exempt and non-exempt personal property" as well as to "permit the Trustee and his real estate broker reasonable access to the [appellants'] residences."  B.R. at 200 (Order Sustaining Trustee's Objection to Exemptions), ECF No. 2.  The actions that followed this Order—and the Bankruptcy Court's subsequent Orders—were the subject of the adversary proceeding.

### B.    The Adversary Proceeding Hearing

On August 16, 2012, the Chapter 7 trustee initiated an adversary bankruptcy proceeding against the appellants, objecting to the appellants' discharge pursuant to 11 U.S.C. § 727.  B.R. at 3 (Trustee's Compl. Objection to Debtors' Discharge Under 11 U.S.C. § 727(a)(6)(A) and (a)(4)(A)), ECF No. 2-1.  Specifically, the trustee moved the Bankruptcy Court to deny the appellants' discharge pursuant to 11 U.S.C. § 727(a)(6), B.R. at 15, ECF No. 2-1, which allows a court to refuse to grant discharge to a debtor if "the debtor has refused, in the case (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify."[3] The instant appellee moved for and was granted permission to intervene in the adversary proceeding pursuant to 11 U.S.C. § 307, on October 2, 2012.  B.R. at 67–68 (Order Granting Motion of the United States Trustee to Intervene), ECF No. 2-1.  The appellee, Judy A. Robbins as United States Trustee, was substituted as primary plaintiff in the adversary proceeding on November 20, 2012.  B.R. at 79–80 (Order Substituting United States Trustee As Primary Plaintiff and Retaining Jurisdiction Over Adversary Proceeding After Closure of Bankruptcy

---

[3] The trustee also moved the Bankruptcy Court to deny the discharge pursuant to 11 U.S.C. § 727(a)(4), which allows a court to refuse to grant discharge to a debtor if "the debtor knowing and fraudulently, in or in connection with the case (A) made a false oath or account," based on statements made by Appellant Maria Ford Moore during a bankruptcy hearing on July 26, 2011, including that she possessed a $100 billion U.S. Treasury Account.  B.R. at 14 ¶¶ 93–97, ECF No. 2-1.  The Bankruptcy Court denied the discharge under 11 U.S.C. § 727(a)(6) and therefore did not reach the § 727(a)(4) arguments.  Trial Tr. ("Tr.") at 132:21–22, ECF No. 5.

Case), ECF No. 2-1. The Bankruptcy Court held a bench trial in the adversary proceeding on

May 20, 2013. *See* Trial Tr. ("Tr.") at 2:2-4, ECF No. 5.

On the morning of the adversary proceeding trial, the appellants filed a purported

"Verified Counter-Complaint For Breach of Fiduciary Duty and an Accounting," B.R. at 185–

260, ECF No. 2-1, alleging, *inter alia*, that the trustee had a duty to investigate whether the

mortgages entered into by the appellants were fraudulent. The Bankruptcy Court noted that the

counterclaim was "not properly before the Court." Tr. at 104:8-9. When the hearing

commenced, the appellants stated their appearances as "Cecilia . . . the executive and beneficiary

for the legal person, Maria Ford Moore," and "Johnny, the executor, administrator and

beneficiary of the legal name, Johnny Andrews Moore Trust." *Id.* at 2:10-19, ECF No. 5. Mrs.

Moore objected to the attorney for the appellee calling her a debtor because Mrs. Moore stated

she was "not a debtor. [She was] a charter guardian." *Id.* at 10:17-21. In their opening

statement, the appellants attempted to challenge the trustee's actions in their bankruptcy petition,

which the Bankruptcy Court found to be in contravention of its Order on the appellee's motion *in*

*limine*[4] prohibiting such evidence. *See id.* at 11:18–12:5. The appellants went on to state that as

"Judas betrayed Christ for a few pieces of silver . . . the United States Government and the state

of the trustees, of the trust created under this public law, one which place all property of the

people into the U.S. Government and state, and that these possessions are a trust to be used as a

credit line, okay?" *Id.* at 17:14-22.

---

[4] In response to the appellants' pre-trial statement, in which the appellants stated they would submit "Evidence [that] will show a duty and a breach of duty on the part of the U.S. Trustee to investigate and to challenge Proofs of Claim filed by banks and lenders," B.R. at 171 (Johnny Andrew Moore, Sr. And Maria Ford Moore Pre-Trial Statement, Witness And Exhibit List), ECF No. 2-1, the appellee filed a motion *in limine* to exclude "any evidence or testimony offered by the defendants regarding the validity of any proofs of claim filed in [the appellants'] Bankruptcy Case No. 10-00515; and any alleged duty of the chapter 7 trustee or the United States Trustee to the [appellants] to review or object to proofs of claim," B.R. at 177 (United States Trustee's Motion In Limine), ECF No. 2-1. The Bankruptcy Court granted the appellee's motion. B.R. at 183–84 (Order Granting United States Trustee's Motion In Limine And Excluding Evidence), ECF No. 2-1.

Counsel for the appellee called the Chapter 7 trustee, Mark Albert ("the trustee"), to testify as to the events that occurred after the Bankruptcy Court's Order sustaining the trustee's objections to the appellants bankruptcy petition. *Id.* at 19:22-23. The trustee testified that, in the Court's order sustaining his objections to the appellants' asset schedules, the Court "permitted [him] and any sales agents and auctioneers to have access to the residences of Mr. and Mrs. Moore to look at the personal property that was listed on the schedules, and [the Court] particularly gave [the trustee] the right, with [his] realtor, to have access to the residence." *Id.* at 28:15-20.[5]

The trustee testified that he and his realtor "attempted to ask [the appellants'] cooperation, [so] that [they] could have access to both [of the appellants'] properties," *id.* at 29:10-12, but the appellants did not respond, *id.* at 31:7-10. Following these attempts, the trustee testified that he filed a "[m]otion to compel access to the real and personal property," *id.* at 31:17-18, which the Bankruptcy Court granted, *id.* 32:1. The trustee testified that, after the Bankruptcy Court granted his motion to compel, he again attempted to contact the appellants and he again received no response. *Id.* at 33:23–34:4. The trustee next filed a motion "to have the U.S. Marshals aid [him] in the process of gaining access to the properties and changing locks," *id.* at 34:16-18, since "some of the pleadings that had been filed [by the appellants', and] some of the actions that had taken place in Court, either were sort of incomprehensible or sort of almost bordering on libelous," *id.* at 34:22–35:1. According to the trustee, the Bankruptcy Court granted his motion seeking the aid of the U.S. Marshals. *Id.* 35:14.

---

[5] During the appellee's direct examination of the trustee, the appellants frequently interrupted the examination with objections, all of which were overruled. *See, e.g.*, Tr. at 21:11-12; 23:20-25; 24:25–25:1; 25:7-8; 26:22–27:18; 28:12-14; 29:3-5; 29:17–30:2. The Bankruptcy Court cautioned the appellants that if they persisted in making unfounded objections they were "going to not be permitted to participate in [the] trial," *id.* at 30:7-8, and that they were in danger of being held in contempt, *id.* at 30:16-23.

After obtaining the Bankruptcy Court's Order, the trustee testified that the Marshals accompanied him to the appellants' property on Independence Avenue in Washington, D.C. where he "had the door opened with the locksmith." *Id.* at 37:6-8. At that time, the trustee testified that he "had the locks changed" on the Independence Avenue property. *Id.* at 36:11. The trustee testified that he next visited the appellants' property on 44th Place S.E. in Washington, D.C., again accompanied by the Marshals. *Id.* at 37:16-25. When approaching the 44th Place property, the trustee testified that the Marshals first donned their bulletproof vests because "[t]hey were not getting good feelings about this [visit] because, you know, there was a knock on the door, they – no one was answering, but [the Marshals] were convinced there was folks in that property." *Id.* at 37:19-22. The trustee testified that the Marshals eventually gained access to the 44th Place property, after which Mr. Moore and two children left the home while Mrs. Moore remained inside. *Id.* at 39:21–40:2. Upon entry, the trustee testified that he did not observe anything "that would suggest [the appellants] had anything in the neighborhood of [the] amount of personal property" they claimed on their amended asset schedules. *Id.* at 42:1-4.

Following these events, the trustee testified that "since there was personal property in [the appellants'] Independence Avenue [property], even though the Court authorized [the trustee] to change the locks, [the trustee] felt that [he] should give Mr. and Mrs. Moore a key to have access, in case they wanted to remove something." *Id.* at 44:7-11. The trustee testified that the appellants "changed the locks" on the Independence Avenue property after the trustee's visit and "put up a sign saying that [the trustee] couldn't sell [the] property," causing the trustee to "come back into the Court to get the locks, I believe, replaced again, and at that point I wasn't going to give them keys anymore." *Id.* at 44:12-17. The trustee further testified that the appellants were

notified that the trustee would be changing the locks "and they were the only ones that were given keys to the property, and then [the trustee] couldn't get in there." *Id.* at 44:19-23.

The appellants had the opportunity to cross-examine the trustee, and attempted to question him regarding the appellants' belief that the trustee had violated his fiduciary duty toward them. *See id.* at 54:17–55:2; 57:12–58:9. The appellants did not elicit any other relevant testimony from the trustee.

Both appellants testified that they had signed their bankruptcy petitions, but did not understand what they were signing. *See id.* at 75:10-14 (Mr. Moore testifying that he and Mrs. Moore "didn't have full knowledge and understanding of these schedules, and we went through them, we looked through them, and still didn't have full knowledge and understanding of them"); 99:17-20 (Mrs. Moore testifying that "I don't know anything about schedules. Now, if you say another subject, maybe I'll know, but I don't know anything about no schedules."). The appellants called one witness in their case-in-chief, the Chapter 7 trustee's lawyer, who corroborated in all material respects the testimony of the Chapter 7 trustee. *See id.* at 106:12–111:3; 113:7-21.

### C. The Bankruptcy Court's Findings And The Instant Appeal

The Bankruptcy Court ruled from the bench and denied the appellants' discharge, making the following findings:

1. The appellee "sent letters to [the appellants] and communicated with them by leaving telephone messages" to which the appellants did not respond. *Id.* at 134:20-22.

2. The appellants did not comply with the October 20, 2011 Order of the Bankruptcy Court directing the appellants to "allow the Trustee and/or his counsel and auctioneers to enter the real properties." *Id.* at 136:2-9.

3. The appellants did not comply with the Bankruptcy Court's Order directing the United States Marshal Service to assist the Chapter 7 trustee by failing to open the door when the Marshals announced their presence at the appellants' property. *Id.* at 137:1-15.

4. It was reasonable to infer, based on the record before the Bankruptcy Court, that the appellants' changed the locks on their property to deny access to the Chapter 7 trustee. *Id.* at 137:16-22.

5. The appellants' action in response to the Bankruptcy Court's orders "flies in the face of the Court's orders, and constitutes a refusal to comply with the Court's orders and is a basis for denial of discharge." *Id.* at 137:23-25.

The appellants' moved to set aside the Bankruptcy Court's judgment and obtain a new trial on May 30, 2013, based primarily on the allegation that the mortgage claims on their properties were based on "false, forged, fraudulent bogus documents and instruments." *See* B.R. at 2 (Defendants' Motion To Set Aside Verdict And For New Trial), ECF No. 2-2. The appellants also alleged that the Bankruptcy Judge erred by failing to recuse himself from the case, failing to compel the Chapter 7 trustee to respond to the plaintiff's interrogatories, and denying the appellants' the opportunity to dispute the validity of the mortgages during the adversary proceeding. B.R. at 4–5, ECF No. 2-2.[6]

In a written opinion issued on June 3, 2013, the Bankruptcy Court denied the appellants' motion, which it treated as a motion for relief under Federal Rule of Civil Procedure 59. *See* B.R. at 10–12 (Memorandum Decision And Order Denying Rule 59 Motion), ECF No. 2-2. The Bankruptcy Court explained that the adversary proceeding was concerned only with "the issue . . . of whether the [appellants] refused to comply with a court order," and the appellants'

---

[6] The appellants also reference a "denial of procedural and substantive due process" in their motion to set aside the Bankruptcy Court's judgment, but make no further effort beyond the conclusory statement to develop that claim. *See* B.R. at 6–7, ECF No. 2-2.

arguments regarding the validity of their mortgages, along with the discovery sought by the appellants were irrelevant. *See* B.R. at 10–11, ECF No. 2-2. The Bankruptcy Court rejected the appellants' arguments that their motion for recusal should have been granted since the Bankruptcy Court's evidentiary rulings against the appellants were not evidence of personal bias. B.R. at 11, ECF No. 2-2. On the same date, the Bankruptcy Court clarified that the appellants' counterclaim was "untimely" and therefore, "a nullity." B.R. at 16–17 (Order Clarifying That Judgment Dismissed Counterclaim), ECF No. 2-2.

The appellants take the instant appeal from the Bankruptcy Court's orders dismissing their counterclaim and denying their discharge on the grounds that the Bankruptcy Court issued its decisions "without any true analysis of the substantive issues in the Underlying case as well as in the Adversary matter in a manner gravely prejudicial to the [appellants] as similarly witnessed in *Liteky v. United States*, 510 U.S. 540 (1994) . . . because the Court has manifest [sic] 'a clear inability to render a fair judgment.'" B.R. at 18 (Notice of Appeal), ECF No. 2-2.

## II.     LEGAL STANDARD

This Court has jurisdiction to hear an appeal from a Bankruptcy Court's "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013. A district court "reviews conclusions of law *de novo* and findings of fact for clear error." *Alberts v. HCA, Inc.*, 496 B.R. 1, 9 (D.D.C. 2013). A Bankruptcy Court's "equitable determinations are . . . reviewed for abuse of discretion." *In re Capitol Hill Grp.*, 313 B.R. 344, 349 (D.D.C. 2004). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re*

*Johnson*, 236 B.R. 510, 518 (D.D.C. 1999) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). It is axiomatic that even if the court is "convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently . . . [w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). "The question of whether a Bankruptcy Court abused its discretion can only be answered in the affirmative if the Bankruptcy Court 'based it's ruling on an erroneous view of the law or a clearly erroneous assessment of the facts.'" *In re Johnson*, 236 B.R. at 518 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

The Bankruptcy Code provides debtors the ability to discharge debts and make a fresh start. Objections filed under 11 U.S.C. § 727 to deny discharge must be established by a preponderance of the evidence and "must be construed strictly as against the objector and liberally in favor of the debtor." *In re Decker*, 595 F.2d 185, 187 (3d Cir. 1979); *see also In re Scott*, 172 F.3d 959, 966–67 (7th Cir. 1999). The majority rule is that when a "'debtor wilfully and intentionally refused to obey the court's order,'" the Bankruptcy Court may deny the discharge. *In re Jordan*, 521 F.3d 430, 434 (4th Cir. 2008) (quoting *In re Jeffries*, 356 B.R. 661, 667 (E.D. Va. 2006); *see also In re Lebbos*, 439 B.R. 154, 165 (E.D. Cal. 2010), *aff'd* 529 Fed. App'x 854, 854 (9th Cir. 2013) (same); *In re Cotsibas*, 262 B.R. 182, 186 (D.N.H. 2001) (same). "A minority of courts, however, have found that an action to revoke discharge brought under Sections 727(d)(3) and 727(a)(6) should be treated as a civil contempt proceeding, thus negating the requirement for a showing of willfulness or intent." *In re Jeffries*, 356 B.R. at 667 (collecting cases). This Circuit has not yet addressed the appropriate standard under which to examine denials of discharge under 11 § 727(a)(6), but the Court need not decide between the

majority and the minority rule here, since it finds that the more stringent majority rule standard is amply met in the instant case.

## III.  DISCUSSION

The appellants make essentially three arguments, namely that: (1) the Bankruptcy Court erred because it failed to allow the appellants to submit evidence regarding the validity of their outstanding mortgages in their underlying bankruptcy petition; (2) the Bankruptcy Court was biased against the appellants and therefore should have been recused; and (3) the Bankruptcy Court should have allowed the appellants to file their counterclaim out of time.  Notably, the appellants do not challenge the findings of fact regarding the appellants' willful violation of the Bankruptcy Court's orders, which was the only issue before the Bankruptcy Court in the adversary proceeding.  *See generally* B.R. at 2–8.  Thus, the Court will first address this fundamental question before turning to the appellants' arguments.

The appellants do not challenge the Bankruptcy Court's factual finding that they willfully violated the Bankruptcy Court's orders to cooperate with the trustee, and there is nothing in the record to indicate that those findings were clearly erroneous.  This effectively ends this Court's inquiry since, once a trustee meets her "burden by showing that the debtor received the order in question and failed to comply with its terms," the burden shifts to the debtor "to explain [her] non-compliance."  *In re Jordan*, 521 F.3d at 434 (quoting *In re Jeffries*, 356 B.R. at 667) (brackets in original).  The appellants have offered no explanation.  *See generally* Appellants' Br., ECF No. 8.

The Bankruptcy Court found that the appellants, at the very least, were aware of its orders to cooperate with the Chapter 7 trustee and allow access to the appellants' property when they chose to change the locks on their property.  *See* Tr. at 137:20-25.  It was not clearly

erroneous to conclude that changing the locks on the appellants' property and consequently depriving the trustee of the ability to access that property was a willful violation of the Bankruptcy Court's order to the appellants to cooperate with the trustee. Furthermore, it was not clearly erroneous, based on the record before the Bankruptcy Court, to find that the appellants were aware of the Bankruptcy Court's Orders. *See* Tr. at 49:9-10 (testimony stating appeal was taken by appellants from Order requiring appellants to cooperate with Chapter 7 trustee's attempts to access appellants' property); *see also In re Moore*, No. 11-1719, Notice of Appeal, ECF No. 1.[7]

It is unclear whether a Bankruptcy Court's decision to deny a discharge based on a finding that a debtor violated a court order under 11 U.S.C. § 727(a)(6) is a factual determination, subject to clearly erroneous review, or an equitable determination, subject to abuse of discretion review. *See In re Cox*, 904 F.2d 1399, 1401 (9th Cir. 1990) (evaluating denial of discharge under Section 727(a)(6) for "gross abuse of discretion"); *In re Kutrubis*, 486 B.R. 895, 902 (N.D. Ill. 2013) (evaluating Section 727(a)(6) dismissal under clearly erroneous standard as factual determination). Under either standard of review, the Bankruptcy Court's finding that the appellants willfully disobeyed the Bankruptcy Court's order to cooperate with the Chapter 7 trustee by allowing access to their properties was correct, since it was supported by the preponderance of the evidence before the Bankruptcy Court and went unchallenged by the appellants. The Bankruptcy Court's judgment denying the appellants' discharge here was proper since the facts in the record indicate the appellants were aware of the Bankruptcy Court's Orders and willfully violated them.[8]

---

[7] A court may take "judicial notice of facts on the public record" in other proceedings. *Covad Comm's Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

[8] The appellants' briefing concerns only the validity of their mortgages and, since those arguments are irrelevant to the adversary proceeding from which this appeal is taken, the Court need not address them.

The appellants other arguments are unpersuasive. First, the issue of whether the Chapter 7 trustee breached any duty to the appellants regarding the validity of the appellants' mortgages was irrelevant to the adversary proceedings since, even if the appellants' claims were correct, such validity would have been of no "consequence in determining the action" before the Court. FED. R. EVID. 401. As such, the Bankruptcy Court correctly applied the Federal Rules of Evidence in excluding such evidence from the adversary proceeding under any standard of review.

Second, the appellants have put forward no colorable argument that the Bankruptcy Court harbored any personal bias against them, let alone such overwhelming bias that recusal was warranted. The case relied upon by the appellants in their notice of appeal, B.R. at 18, ECF No. 2-2, succinctly states why the Bankruptcy Court in this matter was under no obligation to recuse itself. The Supreme Court in *Liteky* noted that a "judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant," but that judge "is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings." *Liteky*, 510 U.S. at 550–51. The mere fact that the Bankruptcy Court ruled against the appellants in disallowing irrelevant evidence—the only evidence of bias to which the appellants refer—does not indicate the type of bias necessary to warrant judicial recusal. *See id.* at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

Finally, the Bankruptcy Court was under no obligation to accept the untimely filing of the appellants' purported counterclaim on the morning of the trial. As the appellee correctly notes, the Federal Rules of Bankruptcy Procedure state that a permissive counterclaim must be filed, with a party's answer, within thirty days of service of the summons. *See* FED. R. BANKR. P.

7012; 7013.  In the instant matter, the appellants were served with the complaint on August 21,

2012.  *See* Appellee's Br. at 15, ECF No. 9.  Under the rules, the counterclaim, submitted on

May 20, 2013, was untimely because it was filed more than thirty days after the appellants had

been served with the adversary proceeding complaint.  The counterclaim could only be entered

with leave of the Bankruptcy Court under Federal Rule of Bankruptcy Procedure 7015, which

the appellants did not seek.  Although the appellants are proceeding *pro se* and, as such, must be

provided more leeway than a party represented by counsel, such leeway "does not constitute a

license for a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure."  *Jarrell v.

Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).  Furthermore, the counterclaim discussed only the

validity of the appellants' mortgages and therefore could not have served to "aid [the appellants]

in presenting the merits," while allowing it would have "prejudice[d the appellee's] action or

defense on the merits."  *See* FED. R. CIV. P. 15(b)(1); FED. R. BANKR. P. 7015 (stating Federal

Rule of Civil Procedure 15 applies in adversary proceedings).  Consequently, the Bankruptcy

Court did not error in denying the appellants' eleventh hour request to serve a counterclaim.

## IV.    CONCLUSION

For the foregoing reasons, the judgment of the United States Bankruptcy Court for the

District of Columbia denying the appellants' discharge and dismissing their untimely

counterclaim is affirmed.

An appropriate Order accompanies this Memorandum Opinion.

Date: March 11, 2014

_____
BERYL A. HOWELL
United States District Judge